IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 27, 2010

Lyle W. Cayce
Clerk

No. 09-10568
c/w
No. 09-10742

FEI BIAN,

Plaintiff - Appellant

v.

HILLARY CLINTON, Secretary of the United States Department of State;
JANET A NAPOLITANO, Secretary, Department of Homeland Security;
JONATHAN SCHARFEN, Acting Director of the United States Citizenship and
Immigration Services; DAVID ROARK, Director of the USCIS Texas Service
Center; ERIC H HOLDER, JR, U S Attorney General

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before KING, WIENER, and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Appellant Fei Bian ("Bian"), a Chinese national residing lawfully in the
United States since 1999, appeals the district court's dismissal of her complaint
seeking to compel the United States Department of Homeland Security,
Citizenship and Immigration Services ("USCIS") to adjudicate her I-485
application for adjustment of immigration status. Agreeing with the appellees

that, under these facts, we lack jurisdiction to review the pace of the USCIS's adjudication process, we affirm.

## I. FACTS AND PROCEEDINGS

Bian holds a Ph.D. in chemical engineering and is employed as a senior environmental consultant in Dallas. In September 2005, she filed an I-485 application with USCIS seeking adjustment of immigration status. Her visa priority date is September 29, 2005, and her visa category is Employment-Based Category 2 (EB-2) with Chinese chargeability. Bian alleges that she had complied with all I-485 application requirements, but that her application was still pending in September 2008, more than three years after she had submitted it to the USCIS. After making numerous unsuccessful inquiries into the status of her application, Bian, proceeding pro se, filed suit seeking declaratory and injunctive relief to compel the USCIS to adjudicate her application.

The defendants concede that Bian is eligible for an adjustment of status, but they urge that they were unable to approve her application because there have been no visa numbers available to assign to her. As the defendants explain, at any given time, the USCIS is able to issue only a limited number of visas in each category. The USCIS determines the number of available visas in a category based on several variables, including past number use, estimates of future number use and return dates, and estimates of USCIS demand and pending USCIS number requests. If the number of eligible applicants in a category is less than the number of visas available for that category, then the category is considered "current," and the USCIS is able to issue visas to every eligible applicant. If, on the other hand, the number of eligible applicants in a category is greater than the number of visas available for that particular category, the USCIS must set a visa availability cut-off date. In such instances,

the USCIS will award visas to all eligible applicants who filed I-485 applications prior to the cut-off date, but will withhold any final decision on applications filed after the cut-off date. As the defendants explain, the current cut-off date for applicants in Bian's category (EB-2 with Chinese chargeability) is June 1, 2004 — more than a year before Bian's visa priority date. Thus, the defendants argue, even if Bian were entitled to relief, they would be unable to grant her an adjustment of status because there is no visa number currently available to her. The defendants contend that, if forced to rule on Bian's application, they would have no choice but to deny her request for an adjustment of status.

In addition to explaining that they were statutorily unable to grant Bian an adjustment of status, the defendants also filed a Rule 12(b)(1) motion urging the district court to dismiss Bian's action for lack of jurisdiction. According to the defendants, federal courts lack jurisdiction to compel the USCIS to adjudicate an I-485 application, as Congress has left the agency's decision-making process — including the pace of the adjudication process — entirely to agency discretion. When Bian failed to file any response to the defendants' Rule 12(b)(1) motion, the district court dismissed the suit for lack of jurisdiction.

Bian appealed the dismissal and filed a motion with the district court seeking reconsideration of its ruling. The district court granted Bian's motion in part, reversing its earlier holding and concluding that it did in fact have jurisdiction to review the pace of the USCIS's adjudication. In reaching that conclusion, the district court distinguished the USCIS's ultimate decision — which the district court acknowledged to be discretionary and not subject to judicial review — from the agency's decision-making process — which, according to the district court, includes a nondiscretionary duty to adjudicate all applications for adjustment of status within a reasonable time. The district

court nevertheless agreed with the USCIS that, even if Bian were entitled to relief, there were no visa numbers available for her, so the court dismissed Bian's complaint for failure to state a claim on which relief could be granted. Bian now appeals both the earlier dismissal for lack of subject matter jurisdiction and the subsequent dismissal for failure to state a claim.

## II. LAW AND ANALYSIS

### A.    Standard of review

We review a dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) de novo.[1]  A district court properly dismisses a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case."[2]

### B.    Discussion

Bian contends that federal courts have jurisdiction to review the USCIS's decision-making process pursuant to the Administrative Procedure Act ("APA") in conjunction with the Mandamus Act.  In response, the defendants urge that the USCIS's pace of adjudication is not subject to judicial review, as Congress has left the process entirely to the agency's discretion.  Although several district courts have addressed the issue, no circuit court has yet ruled on it.[3]

---

[1]  Lundeen v. Mineta, 291 F.3d 300, 303 (5th Cir. 2002).

[2]  Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).

[3]  See Abanov v. Gonzales, No. 06-3725, 2007 WL 2872765 (S.D. Tex. Sept. 28, 2007) (collecting cases).  District courts that have considered this issue have divided sharply as to whether federal courts have jurisdiction to review the USCIS's pace of adjudication for resolving I-485 applications.  Compare, e.g., Bugulu v. Gonzalez, 490 F. Supp. 2d 965, 967 (W.D. Wis. 2007) (holding that federal courts lack "subject matter jurisdiction ... concerning the delay in processing ... adjustment status application[s] because it is a discretionary action by the [USCIS] pursuant to [Section 1252]"); Abanov, 2007 WL 2872765 at *5 (explaining that

## 1.    The Immigration and Nationality Act

In general, an immigrant who is lawfully present in this country may request permanent resident status by filing an I-485 application with the USCIS.[4]  The Immigration and Nationality Act ("INA") specifies that

> The status of an alien who was admitted or paroled into the United States … may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.[5]

---

"Congress has made it clear that [federal courts are] without jurisdiction to hear" complaints regarding the USCIS's pace of adjudication); Safadi v. Howard, 466 F. Supp. 2d 696, 698-700 (E.D. Va. 2006) (concluding that any distinction between the USCIS's decision and its decision-making process is "untenable" and that federal courts lack jurisdiction to review the USCIS's discretionary pace of adjudication) with Dae Hyun Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) (reasoning the USCIS has a nondiscretionary duty to adjudicate adjustment-of-status applications within "a reasonable time" and therefore federal courts have jurisdiction to review the pace of the agency's adjudication).  As the court in Abanov thoroughly noted, even district courts within this circuit have reached divergent conclusions on the issue.  Compare, e.g., Osake v. Dep't of Homeland Sec., 07-308, 2008 WL 151073, *5 (S.D. Tex. Jan. 14, 2008) (reviewing Section 1252 and concluding that federal courts lack jurisdiction to consider complaints regarding the USCIS's pace of adjudication, as "Congress justifiably gave security concerns precedence over an accelerated decision-making process when it immunized that process from judicial review") with Landry v. Chertoff, 2007 WL 2007996, *2-3 (E.D. La. July 5, 2007) (holding that Section 1252's jurisdiction-stripping provision applies only to orders of removal and therefore federal courts do have jurisdiction to consider complaints regarding the USCIS's pace of adjudication).

[4]  8 U.S.C. § 1255(a).

[5]  Id. (emphasis added).  The Attorney General's authority under this section has since been transferred, in part, to the Secretary of Homeland Security and the USCIS.  6 U.S.C. § 271(b)(5).

5

Importantly, 8 U.S.C. § 1255 does not specify a deadline or even a time frame for adjudication of applications, instead committing not only the USCIS's decision but also any "regulations" necessary for making such a decision to agency discretion.

In addition, 8 U.S.C. § 1252, the INA's jurisdiction-stripping provision, specifies that

> [n]otwithstanding any other provision of law (statutory or nonstatutory) ... and [28 U.S.C.] sections 1361 and 1651 ... no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section ... 1255 [adjustment of status] ... or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security....[6]

It is noteworthy that Section 1252 applies not only to the USCIS's grant or denial of an application for adjustment of status, but also to "any other decision or action" within the USCIS's discretion.[7] If Congress had intended for only the USCIS's ultimate decision to grant or deny an application to be discretionary — as distinguished from its interim decisions made during the adjudicative process

---

[6] 8 U.S.C. § 1252(a)(2)(B) (emphasis added); see Safadi, 466 F. Supp. 2d at 698 ("As courts have recognized, this statute's meaning is refreshingly free from ambiguity and its terms are pellucidly clear: It means that courts are precluded from reviewing any discretionary decision or action of [the] USCIS." (emphasis in original)).

[7] 8 U.S.C. § 1252(a)(2)(B) (emphasis added).

— then the word "action" would be superfluous.[8] Instead, Section 1252 expressly exempts from judicial review any "action" that is within the USCIS's discretion and is necessary to carry out the agency's statutory grant of authority. This includes establishing "such regulations as [the agency] may prescribe" to carry out its statutory duty, such as 8 C.F.R. § 245.2(a)(5)(ii), which specifies that "[a]n application for adjustment of status, as a preference alien, shall not be approved until an immigrant visa number has been allocated by the Department of State...."[9] As Bian contests the USCIS's decision to adjudicate her application in compliance with regulations that are clearly within the agency's discretion to establish, the federal courts are without jurisdiction to entertain her claim.

2. The Mandamus Act

Undeterred by the language of the INA, Bian asserts that federal courts have jurisdiction to consider the pace of the USCIS's adjudicative process under

---

[8] We agree with the analysis of the statute in Abanov v. Gonzalez:

The court is unpersuaded that there is any meaningful distinction between the adjustment status decision, which all agree is unreviewable, and the process of reaching that decision. Were the term "action" limited only to the final decision regarding an adjustment of status, then the term "action" in "decision or action" would be superfluous, a result which violates basic principles of statutory interpretation. Thus, "action" must contemplate more than merely the ultimate decision made by the USCIS on an applicant's I-485 application.

2007 WL 2872765 at *5; see Safadi, 466 F. Supp. 2d at 700 ("In effect, plaintiff argues that the phrase 'decision or action' encompasses only the results of the adjudications, i.e., the decision, and not the process. Plaintiff's argument fails as it would impermissibly render the word 'action' superfluous.").

[9] See 8 C.F.R. § 245.2(a)(5)(ii). Examples of comparable USCIS regulations include, e.g., the requirement that applicants be examined by a civil surgeon, 8 C.F.R. § 245.5, the requirement that applicants be interviewed by an immigration officer, 8 C.F.R. § 245.6, and the requirement that certain background checks be performed and fingerprints taken before any application for permanent residence may be granted.

the Mandamus Act, which provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."[10] To establish jurisdiction under the Mandamus Act, the plaintiff's claim must be "clear and certain and the duty of the officer [must be] ministerial and so plainly prescribed as to be free from doubt."[11] As we have previously explained, "mandamus is not available to review the discretionary acts of officials."[12]

As an initial matter, we note that Section 1252's jurisdiction-stripping provision expressly states that it applies "[n]otwithstanding any other provision of law (statutory or nonstatutory), including ... Title 28 ... section[ ] 1361 [the Mandamus Act]."[13] This alone is dispositive of the issue. Nevertheless, we also note as significant the complete absence of any time limit in Section 1255's grant of statutory authority to the USCIS. In fact, the statute specifies that it is within the USCIS's discretion to adjudicate I-485 applications "under such regulations as [the agency] may prescribe."[14] As the USCIS has discretion to adjudicate applications under regulations that it deems necessary to carry out its statutory grant of authority, e.g., by not granting adjustments of status until

---

[10] 28 U.S.C. § 1361.

[11] Giddings v. Chandler, 979 F.2d 1104, 1108 (5th Cir. 1992).

[12] Id.

[13] 8 U.S.C. § 1252(a)(2)(B); see Abanov, 2007 WL 2872765 at * 5 ("Finally, the court notes that section 1252 expressly precludes judicial review notwithstanding section 1361 (Mandamus Act) or any other provision of law.").

[14] 8 U.S.C. § 1255(a).

visa numbers become available, we conclude that the Mandamus Act is unavailable to Bian in requesting us to compel adjudication of her application in violation of the USCIS's established regulations.

Bian nevertheless contends that the USCIS has a "plainly prescribed" duty to adjudicate her application promptly under 8 U.S.C. § 1571, which states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."[15] We do not agree that this statue, which merely expresses Congress's sense of the adjudicative process, establishes that Bian has a "clear and certain" right to have her I-485 application adjudicated within 180 days of its filing — or that the USCIS has a "plainly prescribed" duty to process the application within that time frame.[16] Moreover, even if the statute could be used as a baseline for judging whether the USCIS's pace of adjudication is reasonable, our review is precluded by Section 1252, which bars review of the pace of the USCIS's decision-making process, "[n]otwithstanding any other provision of law (statutory or nonstatutory)."

3. The Administrative Procedures Act

Finally, Bian urges that the Administrative Procedures Act ("APA") too supports the presence of federal jurisdiction over her action seeking to compel the USCIS to adjudicate her application for adjustment of status. We disagree. The APA specifies that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning

---

[15] 8 U.S.C. § 1571.

[16] See Yang v. Cal. Dept. of Social Services, 183 F.3d 953, 961 (9th Cir. 1999) (describing a similar "sense of Congress provision" as "non-binding, legislative dicta").

of a relevant statute, is entitled to judicial review thereof."[17] The APA provides for judicial review of government action "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."[18] Importantly, the APA does not apply to the extent that other "statutes preclude judicial review" or "agency action is committed to agency discretion by law."[19] Here, not only does Section 1252 expressly preclude judicial review "[n]otwithstanding any other provision of law (statutory or nonstatutory)," but the USCIS undeniably has discretion to adjudicate applications "under such regulations as [the agency] may prescribe," providing yet another barrier to the exercise of federal jurisdiction under the APA.

## III. CONCLUSION

We conclude that the district court lacked jurisdiction to consider Bian's claim, as Congress has expressly precluded judicial review of the USCIS's pace of adjudication when the agency acts within its discretion and pursuant to the regulations that the agency deems necessary for carrying out its statutory grant of authority. For the reasons stated above, the dismissal of Bian's claim is AFFIRMED.

---

[17] 5 U.S.C. § 702.

[18] Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64-65 (2004) (emphasis in original).

[19] 5 U.S.C. § 701(a)(1)-(2).